UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICKEY B. DELONEY, | No. 2:12-cv-1339 JAM CKD P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| S. HAVER, et al., | |
| Defendants. | |

Plaintiff is a California prisoner proceeding pro se with an action for violation of civil rights under 42 U.S. § 1983.  Plaintiff's remaining claim concerns improper use of handcuffs by defendants Renner and Boucher (defendants) in violation of the Eighth Amendment.  See ECF Nos. 11 & 42.  Defendants have filed a motion for summary judgment.[1]

I. Plaintiff's Claim

In his complaint, which is signed under the penalty of perjury, plaintiff asserts that on or around July 17, 2011, while he was incarcerated at High Desert State Prison (HDSP), defendants Renner and Boucher transported plaintiff to an appointment with an eye doctor in Redding.

---

[1] Defendants have filed objections (ECF No. 58) to some of the evidence presented by plaintiff with his opposition to defendants' motion for summary judgment.  The court need not rule on the first and second objections as the evidence identified is not material to the court's recommendation as to the disposition of defendants' motion for summary judgment.  With respect to the third objection, which concerns medical records, the court notes that defendants submit the same medical records as exhibits in support of their motion.  See Decl. of B. Barnett, Ex A. at 4-6.

Plaintiff asserts that after Renner placed handcuffs on plaintiff, plaintiff complained that they were too tight. Plaintiff told Renner that the handcuffs were cutting off blood circulation to plaintiff's wrists and were causing pain. In response, Renner told plaintiff to "shut the fuck up." Plaintiff asked a second time that the handcuffs be loosened, but plaintiff's request was again denied. Plaintiff wore the handcuffs for eight hours (four hours on the way to the appointment, and four hours back from the appointment) which caused plaintiff extreme pain by cutting off blood circulation, and by cutting into plaintiff's skin. When plaintiff returned to HDSP with defendants, he requested medical attention because he could not feel his hands and was bleeding.

II. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . ." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show

that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

III. Defendants' Arguments And Analysis

When a prisoner alleges that prison staff have violated the Eighth Amendment by using excessive force, the core judicial inquiry is whether the force was applied "maliciously or sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). Overly tight handcuffs

can constitute "excessive force" forbidden by the Constitution.  Meredith v. Erath 342 F.3d 1057, 1062 (9th Cir. 2003).

The court assumes the truth of the allegations identified above made by plaintiff under penalty of perjury in his complaint with the following exceptions and clarifications:

1.  At his deposition, plaintiff testified that when the handcuffs were initially applied to plaintiff by defendant Renner, they were not too tight.  Later, but before leaving for plaintiff's eye doctor appointment, Renner applied a "black box" to the handcuffs, the handcuffs were readjusted and became too tight.  At that point plaintiff told Renner the cuffs were too tight.  RT at 16.  When plaintiff arrived at the transport bus, he again told Renner his handcuffs were too tight.  This is when Renner told plaintiff to "shut the fuck up."  Before the bus left, plaintiff again asked Renner to loosen his handcuffs.  Renner responded "No, they are fine."  RT at 17.

2.  Also, at his deposition, plaintiff indicated that when Renner finally took plaintiff's handcuffs off, one of plaintiff's wrists was swollen (RT at 26), he had handcuff imprints on his skin (RT at 30) and that cuffs cut into his skin resulting in bleeding.  RT at 33-34.  One of plaintiff's wrists remained swollen for a few days.  RT at 35.

Medical records provided by defendants indicate that on July 19, 2011, plaintiff sought medical treatment for injuries to his wrist caused by a "black box" while plaintiff was being transported to Redding.  Decl. of B. Barnett, Ex. A at 4.  Plaintiff described his pain as "excruciating."  Id. at 5.  The nurse who treated plaintiff noted plaintiff had abrasions over his outer wrists, and they were swollen and tender.  Id. at 6.

Defendants provide evidence indicating that the "black box" is normally applied to the chain portion of handcuffs.  It separates the two cuffs and denies access to the key hole on the cuffs.  Decl. M. Milsap at 2; Ex. A at 8-9.

In his declaration, defendant Renner asserts that when he applied handcuffs to plaintiff prior to transporting him to his eye doctor appointment, the handcuffs "were not so tight such that [plaintiff] would suffer injury from them."  ¶ 12.

Construing all facts in the light most favorable to plaintiff, as the court must, the court finds there is at least a genuine issue of material fact as to whether defendant used excessive force

1  against plaintiff via handcuffs.  Plaintiff asserts he informed defendant Renner three times that his

2  handcuffs were too tight and Renner ignored plaintiff.  He also asserts he suffered more than di

3  minimis injury (e.g. a swollen wrist and bleeding) as a result of the handcuffs being too tight.  If a

4  jury chose to believe plaintiff with respect to these allegations, the allegations could sustain a

5  finding that defendant Renner applied a Constitutionally impermissible amount of force

6  maliciously or sadistically to cause plaintiff harm.

7  With respect to defendant Boucher, plaintiff never alleges that Boucher placed handcuffs

8  on plaintiff, nor that plaintiff ever specifically complained to Boucher that the handcuffs were too

9  tight.  Also, at his deposition, plaintiff asserts Boucher did not apply handcuffs to plaintiff, nor

10  tighten them.  Essentially, plaintiff asserts that he included Boucher as a defendant because of a

11  hard stop he made while driving which resulted in injuries to plaintiff.[2]  RT at 24, 38-43, 51.  For

12  all of these reasons, the court will recommended that defendants' motion for summary judgment

13  be granted with respect to Boucher as there is no evidence before the court that he subjected

14  plaintiff to excessive force via handcuffs or that he was even aware that plaintiff was in pain

15  because handcuffs he was wearing were too tight.

16  Finally defendants assert they are immune to plaintiff's claims under the "qualified

17  immunity doctrine."  Government officials performing discretionary functions generally are

18  shielded from liability for civil damages insofar as their conduct does not violate clearly

19  established statutory or constitutional rights of which a reasonable person would have known.

20  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   In determining whether a government official is

21  immune from suit under the qualified immunity doctrine, the court asks whether the facts

22  demonstrate the denial of a Constitutional right and whether that right is clearly established.

23  Johnson v. B.A.R.T., 724 F.3d 1159, 1168 (9th Cir. 2013).  Defendant Renner is not entitled to

24  immunity from suit under the qualified immunity doctrine as there is at least a genuine issue of

---

[2] Plaintiff asserts one of his wrists dislocated as result of the hard stop and because of the tight handcuffs. See e.g. RT 31, 36, 43, 67. Defendants point to evidence suggesting plaintiff's wrist did not dislocate including that plaintiff made no immediate cry for help at the point when he alleges his wrist dislocated. After reviewing the entire record, the court agrees it is unlikely that plaintiff's wrist actually dislocated, but a specific determination that it did not would not change the court's recommendation as to the disposition of defendants' motion for summary judgment.

material fact as to whether defendant violated plaintiff's Eighth Amendment right to be free of excessive force and that right is clearly established.  Defendant Boucher is entitled to immunity because there is no genuine issue of material fact as to whether he violated plaintiff's Eighth Amendment rights, or any other right.

In accordance with the above, IT IS HEREBY RECOMMENDED that defendants' December 27, 2013 motion for summary judgment (ECF No. 51) be granted with respect to plaintiffs' remaining claim against defendant Boucher and denied with respect to plaintiff's remaining claim against defendant Renner.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 1, 2014

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

1
delo1339.57